UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| UNITED STATES OF AMERICA, | Case No. 11-CR-0255(1) (PJS/AJB) |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| MILTON CARLTON RUCKER, JR., | |
| Defendant. | |

Laura M. Provinzino, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jordan S. Kushner for defendant.

Defendant Milton Rucker was convicted by a jury of attempt or conspiracy to commit bank fraud, aggravated identity theft, and being a felon in possession of a firearm. On August 2, 2012, the Court sentenced Rucker to 204 months in prison and 5 years of supervised release. The Court left open the issue of restitution and, after the parties could not resolve the issue, held an evidentiary hearing on November 20, 2012.[1] Having received the parties' supplemental briefing, the Court orders restitution in the amount of $1,652, which is the full amount that the government is seeking on behalf of Rucker's victims.

In the summer of 2011, Rucker and his codefendant committed a series of automobile break-ins to steal credit cards and other items. The government seeks restitution on behalf of two of Rucker's victims for property that Rucker stole from their vehicles. The victims' losses are calculated as follows:

---

[1]The hearing was originally scheduled for October 16, 2012. Rucker was unwilling to waive his right to be present at the hearing, and thus he had to be transported from the Federal Correctional Institution in Pekin, Illinois, back to Minnesota. Apparently due to some sort of misunderstanding between the parties, no one informed the U.S. Marshal of the need to transport Rucker to Minnesota, and thus the October 16 hearing had to be rescheduled.

Victim D.T.:
- Michael Kors handbag: $450
- Hobo wallet: $110
- Lululemon gift card: $150
- Chanel sunglasses: $400
- Cash: $20

Victim S.M.:
- Bulova watch: $125
- Gym bag: $30
- Sport timer: $10
- Polo shirt: $30
- Driver's license: $12
- Wallet: $50
- Badge holder: $10
- Handcuffs: $30
- Handcuff case: $25
- Athletic wicking shirt: $35
- Athletic wicking shorts: $20
- Towel: $10
- Various shower and personal grooming items: $50
- Water bottle: $10
- Broken-window deductible: $75

*See* Gov't Hr'g Exs. 1, 2.

Some of these items — specifically, D.T.'s handbag and wallet and S.M.'s watch and wallet — were recovered by the government and remain in the government's possession.[2] Rucker argues that the Court cannot order restitution of the value of these items because they will eventually be returned to the victims.[3] *See United States v. Gregoire*, 638 F.3d 962, 974

---

[2] The government also recovered S.M.'s driver's license. S.M. seeks restitution for the cost of replacing the license, however — a cost that he was forced to incur as a result of Rucker's theft of the license.

[3] Shortly before the evidentiary hearing, Rucker filed a Fed. R. Crim. P. 41(g) motion for return of this property to the victims. Rucker has since withdrawn that motion. ECF No. 200 at 2. He now argues, however, that the Court has the authority to order the return of the property pursuant to 18 U.S.C. § 3664(f)(4), which authorizes restitution to be made in the form of the
(continued...)

(8th Cir. 2011) ("restitution may include the retail value of unsold stolen property *if it cannot be returned*"). *Gregoire* states, however, that the anticipated return of property to a victim "normally does not delay immediate entry of a restitution order." *Id.*; *cf. United States v. McCracken*, 487 F.3d 1125, 1128-29 (8th Cir. 2007) (stating that "the district court has no discretion to adjust the total restitution due to the victim based on funds held by law enforcement" and noting that the district court could adjust the restitution order after the money's return). The Court therefore rejects Rucker's argument that it cannot include the value of the property in the government's possession.[4]

Rucker next argues that the government has failed to prove the value of the stolen property. *See United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012) (the government bears the burden of proving the amount of restitution by a preponderance of the evidence). Although the Court had hoped that the government would provide more in the way of evidence

---

[3](...continued)
return of property. This argument is meritless. Section 3664(f)(3)(A) authorizes a restitution order to "direct *the defendant* to make . . . in-kind payments . . . ." (Emphasis added.) Section 3664(f)(4), in turn, states that the "in-kind" payment referred to in paragraph (3) may be in the form of return of property. Read together, then, these provisions authorize the Court to require the defendant to return the property; they do not authorize the Court to order the government to return the property.

[4]The government has proposed a schedule for returning the items in its possession and states that it will ensure that Rucker receives credit for those items. In addition, the government proposes to apply $357 that was seized from Rucker's residence to the restitution order. The government did not obtain a forfeiture order for this money, however, and Rucker apparently contends that it belongs to him. Rucker recently filed an informal letter requesting that a portion of the money be applied to his special-assessment obligation and that the remainder be returned to him. Rucker has not filed a formal Fed. R. Crim. P. 41(g) motion to which the government can respond, however, and thus the Court need not address this issue further.

on this point,[5] the Court concludes that the government has met its burden under the circumstances of this case. The victims are mostly claiming restitution for common consumer items of relatively low retail value and the amounts claimed appear to be within the expected price range for such items. Before the hearing, the government submitted printouts from consumer websites listing prices for Michael Kors handbags, Hobo wallets, Chanel sunglasses, and Bulova watches. ECF Nos. 195-1, 195-2, 195-3, and 195-4. Although the government did not seek the admission of these printouts at the hearing, they were available to defendant beforehand and he did not raise any objection to the Court's consideration of them. They confirm that the amounts sought are in line with the common retail prices of these items. In addition, Agent Fredkove testified that S.M. (who is also an FBI agent) told him the cost of the watch and the wallet, and he also testified — based on his personal experience as an FBI agent — that the prices for certain items that S.M. purchased from the FBI seemed reasonable.

The Court notes that in *United States v. Young*, the Eighth Circuit held that the victim's "estimate" of his lost profits, as stated in the PSR, was an insufficient basis for a restitution award. 272 F.3d 1052, 1056 (8th Cir. 2001). *Young* is distinguishable, however. In *Young*, the disputed amount was a $4,000 "estimate" of the victim's lost profits on $5,600 worth of stolen American Indian artifacts. Here, the restitution at issue (with one or two minor exceptions) concerns the value of common retail consumer items. In addition, in this case victim D.T.

---

[5]The Court cautions that, in future cases, it will expect the government to take more seriously its duty to pursue restitution on behalf of crime victims. The government's pursuit of restitution in this case was, at best, lackadaisical. In particular, the government made almost no effort to introduce evidence establishing the right of the victims to the restitution that they requested; indeed, the government did not even solicit a sworn statement from S.M. about his losses.

submitted her claim under penalty of perjury; there is no indication that the victim in *Young* did the same. Although the documentation of S.M.'s claim was (inexplicably) not submitted under penalty of perjury, Agent Fredkove testified that S.M. told him the cost of the watch and the wallet, which are two of the most expensive items on S.M.'s list. In addition, the Court notes that S.M. testified under oath at trial about, among other things, the contents of his gym bag and the fact that he personally purchased the wallet. The Court found S.M. to be a careful and credible witness. The Court therefore concludes that the government has met its burden as to the value of the stolen property.

Rucker next argues that there is insufficient evidence that he stole the property. The property belonging to S.M. was the subject of much trial testimony, however, and the evidence that Rucker stole S.M.'s gym bag and its contents is overwhelming. As for D.T.'s property, Agent Fredkove testified at the evidentiary hearing that D.T. reported a theft from her car and that D.T.'s purse and wallet, along with an insurance card in D.T.'s name, were later found in Rucker's apartment. To the extent that Rucker contends that there is no proof that items other than D.T.'s purse and wallet were stolen, the Court considers D.T.'s declaration of loss, made under penalty of perjury, sufficient proof that her stolen purse contained such commonplace items as sunglasses, cash, and a gift card.

Rucker also argues that there is insufficient proof that S.M. — who, again, is an FBI agent — personally owned the items for which he is seeking restitution. The Court disagrees. Evidence at trial established that among the items stolen from S.M.'s car were his duty weapon and FBI credentials. S.M. is not seeking restitution for those items, however, which indicates that he is seeking restitution only for the items that he personally owned.

Rucker next argues that the thefts were not part of the offenses of which he was convicted. Again, the Court disagrees. As noted, Rucker was convicted of, among other things, attempt or conspiracy to commit bank fraud. Evidence at trial established that the items were stolen from the victims' cars as part of a series of thefts that were in turn a part of a scheme to defraud banks through the use of stolen credit cards. Rucker's thefts were thus criminal acts committed in the course of the fraudulent scheme of which he was convicted, and a restitution award is therefore proper as to these items. *See* 18 U.S.C. § 3663A(a)(2) ("in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern" is entitled to restitution).

Finally, Rucker objects to the entry of a restitution order beyond the 90-day deadline in 18 U.S.C. § 3664(d)(5). But so long as a court makes clear, before the deadline's expiration, that it intends to order restitution — as the Court did in this case, both at Rucker's sentencing and in the judgment, *see* ECF No. 176 at 5 — the court retains the power to order restitution even beyond the 90-day deadline. *Dolan v. United States*, 130 S. Ct. 2533, 2537 (2010). The Court therefore rejects this argument and orders restitution in full.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Milton Rucker's motion for return of property [ECF No. 197] is WITHDRAWN.

2. Rucker is ordered to pay restitution in the total amount of $1,652, which consists of $1,130 to victim D.T. and $522 to victim S.M. This amount is due and payable immediately, and Rucker will be jointly and severally liable for it with his codefendant. The interest requirement is waived.

3. While Rucker is incarcerated, he must make payments toward his restitution obligation as follows: If he is working UNICOR, he must make monthly payments of at least 50 percent of his earnings. If he is not working UNICOR, he must make quarterly payments of at least $25.

4. After Rucker is released from prison, he must begin making payments toward any remaining restitution obligation within 30 days of his release. He must make monthly payments of at least $50. If the probation officer determines that he is able to pay more than $50 per month, then he must make restitution payments in the amount directed by the probation officer.

5. Rucker's payments should be made to the Clerk of U.S. District Court for the District of Minnesota, who will forward the payments to the victims.

6. Rucker's conditions of supervised release are modified to include the following condition: that he pay restitution in accordance with the Schedule of Payments sheet of the Judgment.

7. The Court will enter an amended judgment reflecting Rucker's restitution obligations.

Dated: December 20, 2012        s/Patrick J. Schiltz
                                Patrick J. Schiltz
                                United States District Judge